UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

                Plaintiff,                        Case No. 1:12-CR-156

v.                                                Hon. Paul L. Maloney

DEWAIN JANELL CLARK,

                Defendant.

_____/

**MEMORANDUM DETENTION ORDER**

Defendant was arrested in Miami, FL, upon his return from a Carribean cruise, and appeared before a United States Magistrate Judge in the Southern District of Florida where a detention hearing was held on October 4, 2012, and bond was set in the amount of "$200,000, 10%." Defendant did not post bond and was removed to this district, which is the charging district.

The government contends that the Florida detention hearing constituted the one full detention hearing to which a prisoner is entitled under the Bail Reform Act, 18 U.S.C. §3141, *et seq,*, and any review thereafter must be before the district judge in this district. See 18 U.S.C. §3145(a) (district judge may review a magistrate judge's release order on motion by the government or defendant). Normally, only the district court in the prosecuting district may reverse a release order or a detention order of a magistrate judge in the district of arrest. *United States v. Cisneros,* 328 F3d 610, 615 (10th Cir. 2003); *United States v. El-Edwy,* 272 F.2d 149 (2nd Cir. 2001); *United States v. Torres,* 86 F.3d 1029 (11th Cir. 1996); *United States v. Evans,* 62 F.3d 1233 (9th Cir. 1995). And within the prosecuting district, review in the prosecuting district must be before the

1

district judge, not the magistrate judge. *See, United States v. Vega,* 438 F.3d 801, 802 (7th Cir. 2006); *Cisneros,* 328 F.3d at 615; *Evans,* 62 F.3d at 1239.

In this instance, however, there was no written release order or detention order issued in Florida from which a review could be taken. *See* Fed. R. App. P. 9(a) and 18 U.S.C. §3142(i)(1). The Florida court's minute sheet simply states, "$200,000 10% with Nebbia co-signed by mother. Conditions to be set at Nebbia Proceedings." (A warrant of removal also notes that bail set by the court was not posted, but this warrant clearly was neither a release order nor a detention order.)

To clarify the proceedings in the Southern District of Florida, this court requested a transcript of the hearing in that district. Having received and reviewed that transcript, it is evident that the purpose of the Florida detention hearing, as understood by the participants from the outset of that hearing, was to determine a bond which was appropriate to get the defendant to this district, where the matter could be addressed again.

| | |
|---|---|
| THE COURT: | Have you contacted the demanding district or any other district? |
| DEFENSE COUNSEL: | Judge, they are not willing. I haven't been able to work out a bond with Mr. Clark. |
| THE COURT: | Well, then, no matter what we do here they can supersede it. |
| DEFENSE COUNSEL | They cannot supersede. That's not correct, Your Honor. **They can ask for a different bond** when he gets to Michigan, but **the inquiry for this court is what bond is appropriate to get Mr. Clark home to Michigan** where he lives right now. |
| THE COURT: | Well, all right. We will go ahead with the pretrial detention then. |

2

Transcript of Removal and Pretrial Detention Hearing, Southern District of Florida, Case No. 12-MJA-03330-PALERMO, October 4, 2012, at 4 (emphasis added).

At the conclusion of the Florida hearing, the court inquired of the defense counsel the type of bond he would suggest. Defense counsel replied that a $50,000 10% bond would be feasible. Apparently this was an amount defendant could pay and it would be co-signed by his sister and mother. The court, however, with no further explanation, immediately quadrupled that amount to $200,000 10%. Transcript, *supra,* at 19-20. Defendant could not post the bond and was removed to this district.

Pursuant to 18 U.S.C. §3142(a), a defendant is to be released on conditions that are determined to be the least restrictive that will reasonably assure his appearance and the safety of the community, or if the court finds no such conditions, he is to be detained. If a court decides that a defendant is to be released subject to conditions, the court is specifically prohibited from "impos[ing] a financial condition that results in the pretrial detention of the [defendant]." §3142(c)(2). This provision was intended to prevent the practice of "*de facto* preventive detention," where a judge might jail a defendant without a proper finding of risk of flight or danger to the community, by setting such an exorbitant financial bail that the defendant could not meet it. *See, United States v. Westbrook,* 780 F.2d 1185, 1187, n. 3 (5th Cir. 1986). Thus, it is generally assumed that if the court sets bail with a financial condition the defendant cannot meet, such a circumstance would contravene the statute.

The government argues that there is a line of cases that conclude that "if the record shows that the detention is not based solely on the defendant's inability to meet the financial condition, but rather on the district court's determination that the amount of the bond is necessary

to reasonably assure the defendant's attendance at trial," the *de facto* detention of a defendant under these circumstances does not violate §3142(c)(2), citing *United States v. Fiddler,* 419 F.3d 1026, 1028 (9th Cir. 2005). In *Fiddler*, the Ninth Circuit reasoned that the defendant's detention was "not because he cannot raise the money, but because without the money, the risk of flight is too great." *Fiddler, supra,* at 1028 citing *United States v. Jessup,* 757 F.2d 378, 388-89 (1st Cir. 1985) *abrogated on other grounds by United States v. O'Brien,* 895 F.2d 810 (1st Cir. 1990).

But, of course, if that statement were taken at face value, the defendant's detention was precisely because he could not raise the money, or to put it in the words of the statute, his detention is because the court had "impose[d] a financial condition **that results** in the pretrial detention of the person." §3142(c)(2) (emphasis added).

Indeed, the Ninth Circuit concedes that "the practical result of a release order that imposes a bond that the defendant is unable to post is the same as that of a detention order imposed under §3142(e), . . .", *Fiddler, supra,* at 1028. It points out, however, that "from a procedural standpoint the circumstances are quite different." *Id.* According to the Ninth Circuit, if a court wants to issue a release order, it is not required to afford the defendant the protections afforded by a full detention hearing as set forth in §3142(f). By contrast, before a "detention order" can be issued, the statute "explicitly requires a detention hearing to be held 'pursuant to the provisions of §3142(f)'". *Id.*

If *Fiddler* were to be read to say only that a court may circumvent the procedural safeguards of a full detention hearing by attaching heavy financial conditions to a release order that a defendant could not meet, using as excuse that without such financial imposition the risk of flight

4

would be too great, the court would clearly be defying the intent of Congress and inviting a re-examination by that body of a court's role in setting bond.

Fortunately, the reading of the statute is seldom so circumscribed.  In cases where release orders with unmet financial conditions have been upheld, courts have usually found that a defendant's inability to meet such conditions triggered the need for a further finding of record (whether in a proceeding formally called a detention hearing or not) that such financial conditions were necessary in light of a defendant's risk factors.  Such findings of record have been tantamount to a detention order, and the rights of defendants in these cases to a written finding that detention is necessary have not been circumvented.  *See Westbrook, supra,* at 1188 ("Westbrook was detained only after the district court determined that no *available* condition of pretrial release would reasonably assure Westbrook's appearance at trial.  Following a detention hearing conducted pursuant to §3142(f), the district court, . . . issued a detention order . . . . The order indicates that Westbrook was detained only after a detention determination by the court pursuant to 18 U.S.C. §3142(e)") (emphasis in original); *United States v. McConnell,* 842 F.2d 105, 108-111 (5th Cir. 1980) ("In the case at bar, the trial court detailed the reasons it considered a very substantial bail setting 'reasonably necessary to assure the appearance of [McConnell].' . . . . Congress [in the Bail Reform Act] expanded the availability of bail, proscribing the setting of a high bail as a *de facto* automatic detention practice. . . . Should the judicial officer conclude that a large bond is an essential part of a package of conditions designed to secure a reasonable assurance of that defendant's appearance, *and the record contains a reasonable basis for that conclusion,* the conditions would be neither constitutionally nor statutorily infirm [emphasis added].  Although McConnell does not complain about the absence of a formal hearing, we remind that the detention hearing is a critical

5

component of the Bail Reform Act."). *See also,* S.Rep. No. 98-225, 98th Cong., 1st Sess. 6-7, *Reprinted in* 1984 U.S.Code Cong. & Ad.News 3188-3189 ("§3142(c) provides that a judicial officer may not impose a financial condition of release that results in the pretrial detention of the defendant. The purpose of this provision is to preclude the sub rosa use of money bond to detain dangerous defendants . . . . Thus, for example, if a judicial officer determines that a $50,000 bond is the only means, short of detention, of assuring the appearance of a defendant who poses a serious risk of flight and the defendant asserts that, despite the judicial officer's finding to the contrary, he cannot meet the bond, the judicial officer may reconsider the amount of the bond. If he still concludes that the initial amount is reasonable and necessary, then it would appear there is no available condition of release that will assure the defendant's appearance. This is the very finding which, under §3142(e), is the basis for an order of detention, and therefore the judge may proceed with a detention hearing pursuant to §3142(f) and order the defendant detained, if appropriate. The reasons for the judicial officer's conclusion that the bond was the only condition that could reasonably assure the appearance of the defendant, the judicial officer's finding that the amount of the bond was reasonable, and the fact that the defendant stated he was unable to meet this condition, would be set out in the detention order as provided in §3142(I)(i)."). In short, a finding that a defendant is unable to meet the financial conditions of a release order serves as a trigger to proceed to make the findings necessary to detain a defendant pursuant to a detention hearing. See §3142(f)(2).

No such additional findings of record which would be equivalent to a detention order were made by the Florida court in the present case. The court simply set a high cash bond beyond the wherewithal of defendant, without explanation. Thus, as previously noted, there is no order of

release nor detention order here within the meaning of the Bail Reform Act, written or otherwise, to suggest defendant has been afforded the full hearing to which he is entitled under the Act, regardless of how the Florida hearing is characterized.

   Detaining a prisoner long enough to transfer him to a charging district where he can elect to have his detention hearing is not an uncommon practice. A prisoner is entitled to a full detention hearing, and may choose to have it either in the district of arrest, or the district to which he is being returned. Defendant having only been afforded a hearing in Florida for the limited purpose of getting him to Michigan, the high cash bond appearing to otherwise contravene §3142(c)(2) and the undersigned having the power to re-open a detention hearing, *see* §3142(f), I determined the defendant had not yet been afforded a full detention hearing, *see* §3142(c)(2), for the purpose of determining his custodial status pending trial, and directed the parties to proceed with that hearing immediately.

   Having then conducted a detention hearing pursuant to §3142(f), I concluded that the following facts require detention of the defendant pending trial in this matter. Defendant is one of eight defendants charged with conspiring to defraud the United States and he is named in related charges pertaining to access device fraud and aggravated identity theft. The purported scheme involves re-encoding magnetic strips on gift cards to utilize identification information stolen from victims' credit cards.

   Defendant, age 28, lives in Detroit and has no ties to this district. He reports no assets other than a 1997 Chevrolet Tahoe, and his most recent employment has been part-time work at a barber shop. Although claiming no assets, he was arrested by the Secret Service upon his return from a Caribbean cruise.

Defendant has previously been convicted of offenses pertaining to the forgery or alteration of identification, and with possession of fraudulent financial transaction devices. At the end of 2010, when police attempted to apprehend defendant, he scaled a fence in an attempt to flee. He was subsequently caught, charged and convicted in August 2011 on seven felony counts. He was on probation following those convictions when he allegedly committed the present violations.

The pending charges resulted from known losses of $40,000 in one day. Three of the eight defendants remain at large and are avoiding apprehension.

Based upon these facts, the court finds by a preponderance of the evidence that no condition or combination of conditions will assure the presence of the defendant for future court proceedings, based upon, *inter alia,* his lack of contacts with this district, his ability through the use of fraudulent financial access devices to access considerable amounts of money quickly, his ability to travel outside the country, the substantial penalties he is facing, and his attempt to flee police in Troy, Michigan.

The court further finds by clear and convincing evidence that no condition or combination of conditions will assure the safety of the community from further fraudulent financial transactions by the defendant based on the pending charges, two previous convictions on similar charges, and defendant's alleged commission of the present offenses while already under court supervision (probation) to another court.

The defendant is committed to the custody of the Attorney General or his designated representative for confinement in a corrections facility separate, to the extent practicable, from persons serving sentences or being held in custody pending appeal. The defendant shall be afforded a reasonable opportunity for private consultation with his defense counsel. On order of a court of

the United States or on request of an attorney for the government, the person in charge of the corrections facility shall deliver the defendant to the United States marshal for the purpose of an appearance in connection with a court proceeding.

**IT IS SO ORDERED.**


Dated:  November 20, 2012                    /s/ Hugh W. Brenneman, Jr.
                                             HUGH W. BRENNEMAN, JR.
                                             United States Magistrate Judge